UNITED STATES DISTRICT COURT
<u>SOUTHERN DISTRICT OF NEW YORK</u>

Salli J. Bragg, individually and on behalf of others similarly situated,

                              Plaintiffs,

                V.                                        05 CIV 7280 (CM)(LMS)

Terrier Claims Services, Inc., Daniel J. Sullivan, and Edward J. Sulllivan,

                              Defendants.

**PLAINTIFF'S BRIEF IN SUPPORT OF APPLICATION FOR PROTECTIVE ORDER, TEMPORARY RESTRAINING ORDER, INJUNCTION AND SANCTIONS**

Respectfully Submitted

by

Dan Getman (DG4613)
Law Office of Dan Getman
9 Paradies Lane
New Paltz, NY 12561
(845) 255-9370

COUNSEL FOR PLAINTIFF

**INTRODUCTION**

This is an overtime and minimum wage back pay case raising claims under state and federal overtime law. Plaintiff brought this case as a collective action on behalf of people employed by the defendant as an Investigator or Surveillance Investigator (hereafter collectively referred to as "Investigators") under the Fair Labor Standards Act (FLSA) as well as a class action under Fed. R. Civ. P. Rule 23 for members of the class working in New York under the New York overtime law, 12 N.Y.C.R.R. §142-2.1. The application for class and collective relief was filed on November 4th, as directed by Judge McMahon in the initial conference on October 28th.

The defendants failed to pay its Investigators overtime at the rate of time and one half, notwithstanding federal and state law. There is no valid defense to federal and state overtime requirements to pay for all hours and time and one-half for overtime for these plaintiffs. *Reich v. State of N.Y.,* 3 F.3d 581, 587-8 (2d Cir. 1993)(no administrative exemption for BCI investigators because investigations are production work rather than administrative activity) *cert. den.* 510 U.S. 1163.

Not having any valid defense to this action, defendants have engaged in a variety of unlawful guerrilla tactics to try to defeat the class and collective action application, in order to avoid having to pay all investigators the back pay due them. First, defendants filed two lawsuits against plaintiff –one in District Court in New Jersey and one in Supreme Court in Westchester County – for 3.2 million dollars, alleging slander and that plaintiff overstated her hours of work. (Exs. B,C) Second, defendants' counsel secured agreements to forego litigation in Court from absent class members, during the pendency of the class and collective action motion, so that any judicial relief would be preemptively thwarted and class members could not become participants

in this litigation ("Arbitration Agreement" Ex. E). Employees were informed that to keep their jobs, they would have to sign the agreements. (Ex. E) Third, defendants' counsel engaged in unauthorized communication with plaintiff Bragg and with absent class members, without plaintiffs' counsel's knowledge or permission and without the approval of the court. Fourth, one of the plaintiffs in the case has now asked to withdraw his claims, citing concerns for his family. *Ex. H.*

The result of defendants' actions is that class members will be afraid to exercise their right to back wages. Defendants have clearly communicated, in improper, unsupervised communications with class members, that joining this suit will result in loss of employment and retaliatory countersuits. Through the illegal "arbitration agreement" defendants have created the impression among class members that they are legally unable to join this case.

In this motion, plaintiff seeks to redress the defendants' improper efforts to chill participation in this case.

**FACTS**

    **A.    Countersuits and Improper Communication with Plaintiff Outside of Counsel's Presence.**

Immediately after plaintiff sued for unpaid overtime, defendants counter-sued plaintiff. Acting though its counsel in this case -- Joseph Labuda – defendants have filed two separate suits against plaintiff. The suits claim 3.2 million dollars from Bragg, alleging that she inflated her work hours and slandered the defendant.[1] (Exs. B, C) In the first suit, TCS sues Bragg in

---

[1] Prior to filing these suits, defendants' counsel had advised plaintiffs' counsel that it would bring counterclaims against the plaintiff if she did not quickly settle the case on an individual basis. *Getman decl. Ex. A, ¶3*. It has apparently attempted to increase its leverage by bringing separate suits in two additional jurisdictions, even though such matters clearly concern the exact same wage issues raised here. TCS is the plaintiff in one suit and John O'Shaughnessy,

3

Supreme Court of Westchester County alleging that plaintiff Bragg exaggerated her travel time, mileage, and other work time, and that she slandered TCS by claiming it engaged in illegal behavior. (Ex. B) Mr. Labuda also filed a claim in the District Court for the District of New Jersey on behalf of John O'Shaugnessy (the Albany office supervisor) alleging that Ms. Bragg slandered him personally by claiming that he withheld wages due employees.[2] (Ex. C)

      Both suits are procedurally erroneous. The TCS claims are subject to the compulsory counterclaim process, F.R.C.P. Rule 13(a) and the New Jersey claim lacks personal jurisdiction. Plaintiff has no minimum contacts with New Jersey that would permit a suit against her. Plaintiff never worked there for defendants, does not live there, and there is no connection between the litigation and the forum. There simply is no personal jurisdiction over plaintiff in that forum. Defendants are clearly trying to make recovering her back pay as burdensome on plaintiff as possible.[3]

      Doubtless the merits of this flurry of litigation are not the point. The point is to be able to

---

the defendants' Albany Office Manager is the plaintiff in the other.

    [2]Of course, retaliatory lawsuits are themselves actionable under the FLSA anti-retaliation protections. *Bill Johnson's Restaurant v. NLRB,* 461 U.S. 731 (1983)(retaliatory suits actionable); *Martinez v. Deaf Smith County Grain Processors,* 583 F. Supp. 1200 (N.D. TX 1984)(state court actions are FLSA retaliation if filed with retaliatory motive and lacking reasonable basis in fact or law). The claims lack a reasonable basis in fact and law, though that is clearly of little moment for TCS in its current efforts to chill participation in this case.

    [3]The actions could have been brought by Mr. Labuda together and as counterclaims in this case. However, the procedural irregularities multiply. Defendants' counsel never gave notice to plaintiff's counsel about the suit, nor were the suits mentioned to the Court (at the initial conference) even though the cases had already been filed. On top of that, defendants' counsel sent plaintiff herself a letter about the suits asking her to contact him directly, without ever giving notice of the letter to plaintiff's counsel (Ex. D). When Ms. Bragg did call defense counsel Labuda directly out of confusion, he spoke with her and advised her to contact Terrier Claims Service directly. Mr. Labuda did all this despite repeated prior warnings by me that he was not to contact my client directly. (Ex. F, communications on 11/1/05 at 12:40, 4:30, 5:02)

demonstrate to employees that defendants will countersue anyone for millions of dollars, if they consider joining plaintiff Bragg's suit. Putting the word out that defendants have countersued plaintiff Bragg for $3,200,000 no doubt will have the effect defendants intend. Individual employees will likely be fearful of affirmatively opting into litigation when the defendant in that suit makes it known it will file countersuits against employees who assert their rights.

Defendants' counsel has also routinely communicated with both plaintiff Bragg and members of the plaintiff class without the presence or permission of plaintiffs' counsel. After serving plaintiff Bragg, he sent her a notice asking her to contact him. (Ex. D) When plaintiff Bragg did contact Mr. Labuda, he asked her if she was represented (knowing full well she was, since he had already been at a conference in the case with me and held numerous prior calls).[4] When she said she was represented, Mr. Labuda told Ms. Bragg to contact Terrier Claims Services, Inc., apparently in order to resolve the litigation. The letter and phone conversation were completely inappropriate and violate Disciplinary Rules. Mr. Labuda, not content to have improper conversations with the named plaintiff, also directed others to communicate with members of the class and secure the waivers with respect to their legal rights as addressed in this case. (Ex. D).

### B.   Improper Solicitation of Arbitration Agreements With Absent Class Members.

After plaintiff made her motion for class and collective action relief, defendants, through the direction of counsel, began circulating a purported Arbitration Agreement to members of the class. (Ex. E) The "Agreement" suggests that if it is not signed, employees will lose their jobs. If

---

[4]Although defense counsel had already filed both suits against Bragg prior to the initial conference in this case, he never communicated that to plaintiffs' counsel or the court.

signed, it suggests that employees cannot sue for overtime in Court, cannot bring claims collectively or as a class, cannot bring overtime claims to the Department of Labor, and can only proceed in an arbitral forum. *Id.* Thus the class members would be precluded from opting-in to this case, and it would appear that they could be forced to opt-out of the class claims.

      C.      **Defense Counsel Has Impermissibly Communicated Directly with Plaintiffs and the Class.**

The arbitration agreement submitted to employees is a "Word" document. (Ex. H) The Word Document shows that it was authored by "Marshall M Miller Assoc" (defense counsel Labuda is or was affilliated with that firm). Mr. Labuda initially gave plaintiff's counsel that firm as his address and contact information. Since that initial communication, defense counsel lists a different firm as counsel in this action, however, it is clear that the agreement was prepared by Mr. Labuda and communicated to defendants for delivery to the plaintiffs.

      D.      **Withdrawal of Opt-In Joshua Miller**

Within days of Joshua Miller signing a retainer agreement with plaintiffs' counsel and opt-ing in to this case, Mr. Miller indicates his desire to opt-out and withdraw his claims. Under suspect conditions, Mr. Miller felt he could not proceed in this case, citing concerns for his family. *Ex. H.*

**POINT ONE**

**A PROTECTIVE ORDER SHOULD BE ENTERED TO PRECLUDE DEFENDANTS FROM SOLICITING, RECEIVING, OR OTHERWISE USING ANY ARBITRATION AGREEMENTS.**

It is the job of the Court to safeguard the rights of unnamed and unknown prospective plaintiffs in this collective action. *See Hoffman-LaRoche v. Sperling*, 493 U.S. 165 (1989); *Belt v. Emcare*, 299 F. Supp. 2d 664 (W.D. Tex 2004). As the *Sperling* Court noted, judicial oversight

of the contents of the notice helps protect against misleading communications to potential class members because the court resolves any disputes about the contents of the notice prior to its distribution. *Sperling*, 493 U.S. at 171, 110 S.Ct. at 486-87, 107 L.Ed.2d at 488; As the Eleventh Circuit explained in *Kleiner v. First National Bank of Atlanta*, 751 F.2d 1193, 1203 (1985)(disqualification and $50,000 fine for counsel's advice to defendant to solicit opt-outs in violation of court order, affirmed), "[u]nsupervised, unilateral communications with the plaintiff class sabotage the goal of informed consent by urging exclusion on the basis of a one-sided presentation of the facts, without opportunity for rebuttal. The damages from misstatements could well be irreparable." See also *Bower v. Bunker Hill Co.*, 689 F.Supp. 1032, 1033 (E.D.Wash.1985) (recognizing "extreme potential for prejudice to class members' rights" if defendant was permitted to discuss suit with class members). Further, the solicitation of exclusions from a pending class action by a defendant constitutes a serious challenge to the authority of the Court to maintain control over communications with class members. *See* 3 *Newberg on Class Actions* § 15.19 (3d ed. 1992). "Unsupervised unilateral communications with the plaintiff class sabotage the goal of informed consent by urging exclusion on the basis of a one-sided presentation of the facts, without opportunity for rebuttal. The damage from these statements could well be irreparable." *Kleiner, supra*, 751 F.2d at 1203 *citing Zarate v. Younglove*, 86 F.R.D. 80, 90 (C.D. Cal. 1980)). Such conduct warrants restraint.

   The Courts have prohibited actions by defense counsel that chill participation in an expected class or collective case. For example, in *Belt v. Emcare, Inc.,* 299 F.Supp.2d 664 (EDTX 2003), the Court prohibited and sanctioned an employer's attorneys' ex parte communication with members of an FLSA collective action class. In that case, the defendant's counsel drafted a misleading letter to members of the class concerning the merits of joining the

case, in a manner designed to chill participation. The letter was sent before the class notice was mailed.

> As in Rule 23 class actions, courts have the authority to govern the conduct of counsel and parties in § 216(b) collective actions. *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 171, 110 S.Ct. 482, 107 L.Ed.2d 480 (1989). Moreover, a court's authority to control counsels' conduct in a § 216(b) collective action includes the authority to "manage the process of joining multiple parties in a manner that is orderly, sensible, and not otherwise contrary to statutory commands or the provisions of the Federal Rules of Civil Procedure." Id. Indeed, because of the potential for abuses in collective actions, such as unapproved, misleading communications to absent class members, "a district court has both the duty and the broad authority to exercise control over a class action and to enter appropriate orders governing the conduct of counsel and parties." *See Gulf Oil Company v. Bernard*, 452 U.S. 89, 100, 101 S.Ct. 2193, 68 L.Ed.2d 693 (1981).
>
> * * *
>
> Courts have found a need to limit communications with absent class members where the communications were misleading, coercive, or an improper attempt to undermine Rule 23 by encouraging class members not to join the suit. *See Kleiner v. First Nat. Bank of Atlanta*, 751 F.2d 1193, 1206 (11th Cir.1985); *Burrell v. Crown Central Petroleum*, 176 F.R.D. 239, 244-45 (E.D.Tex.1997); *Hampton Hardware, Inc. v. Cotter & Co., Inc.*, 156 F.R.D. 630, 632-33 (N.D.Tex.1994). As commercial speech, ex parte communications tending to discourage absent class members from joining the suit may be limited by orders grounded in good cause and issued with a heightened sensitivity for First Amendment Concerns. *Kleiner*, 751 F.2d at 1203; *Hampton Hardware, Inc.*, 156 F.R.D. at 633. Courts examine four criteria to determine good cause in this context: the severity and likelihood of the perceived harm, the precision with which the order is drawn, the availability of a less onerous alternative, and the duration of the order. *Kleiner*, 751 F.2d at 1203; *Hampton Hardware, Inc.*, 156 F.R.D. at 633.
>
> In considering whether to limit Defendants' speech with absent class members, the Court, as noted above, first determines whether there is a need for limitation on speech and then tailors the limitations accordingly. Thus, the Court first determines whether Defendants' speech is misleading, coercive, or an attempt to undermine the collective action. Then, if the Court finds any basis for restricting the speech, it will tailor appropriate injunctions and sanctions in light of First Amendment concerns.

299 F.Supp.2d at 667-8. The Court then found the defendants' letter to absent class members

misleading and also coercive "by suggesting that this action could affect the potential class members' employment." *Id. at 668.* The same suggestion appears in the "Arbitration Agreement" defendants solicited here.

The *Belt* Court went on to note,

> Finally, the Court finds that EmCare's letter was intended to undermine the purposes of the collective action by encouraging absent class members not to join. EmCare could have no purpose but to discourage absent class members from joining the suit when it misrepresented damages available and preyed upon the absent class members' fears and concerns. The fact that defense counsel admittedly assisted in the letter's drafting convinces the Court that these misrepresentations were not accidental. Additionally, sending the letter with no notice to Plaintiff or the Court, the day before EmCare was to provide Plaintiff with the potential class members' mailing addresses for the Court-approved notice, persuades the Court that EmCare intended to subvert the Court's carefully crafted notice and its role in administering the collective action.

299 F.Supp.2d at 669. As a remedy for the non-approved ex parte letter, the Court enjoined future ex-parte communications, and required a corrective letter on defendants' letterhead. The Court also sanctioned defendant by requiring it to bear corrective notice costs and all reasonable attorneys' fees and costs plaintiff incurred in bringing the motion. The court also reserved the option of allowing class members to opt in to the case, post-verdict as a further sanction, and reserved possible future sanctions. All of these remedies are required here.

In a similar case in this District in the Rule 23 class action context, *In re Currency Conversion Fee Antitrust Litigation,* 361 F.Supp.2d 237 (SDNY 2005), this Court held that an arbitration clause solicited of absent class members during the litigation but prior to class notice is unconscionable, is necessarily invalid as coercive, and is also prohibited by Rule 23. Yet that is precisely what defendants have done here.

First, this Court in *In re Currency Conversion Fee Antitrust Litigation*, held that an arbitration agreement solicited of class members prior to certification of the class was coercive,

unconscionable, unenforceable and prohibited:

> There was no reasonable manner for cardholders to know that by failing to reject the arbitration clause, they were forfeiting their rights as potential plaintiffs in this litigation. Chase and Citibank do not contest that they did not notify cardholders about this litigation, but assert instead that they were not required to provide that information. . . . Chase argues it is not obliged "to describe existing lawsuits that may, but not necessarily will, be affected by the provision at some unspecified time in the future." This Court disagrees. The putative class members' rights in this litigation were protected as of the filing date of the complaint. *See Kahan v. Rosenstiel*, 424 F.2d 161, 169 (3d Cir.1970) (noting that a putative class members' rights in a litigation are protected as of the filing date of the complaint); *McDowall v. Cogan*, 216 F.R.D. 46, 50 (E.D.N.Y.2003) ("Rule 23(e) applies even in the context of putative class actions. Its reach to cases in the pre-certification stage reflects the requirement that courts, for the purposes of settlement, must presume that a class action is 'proper,' i.e., that the class has been certified, prior to actual certification."); *Ross v. Warner*, 80 F.R.D. 88, 90 n. 2 (S.D.N.Y.1978) ("It is well settled law that from the time of filing a class action, including the period before its certification, it is to be dealt with as such for purposes of dismissal or compromise."); see also 4 Alba Conte & Herbert Newberg, *Newberg on Class Actions* § 11:65 (2002) ("It is well settled law that during the interim between filing of a class action and the 23(c)(1) determination by the court, it must be assumed to be a class action for purposes of dismissal or compromise under 23(e) unless and until a contrary determination is made under 23(c)(1)." (internal quotations marks and citations omitted)).
>
> As a result, this Court holds that Chase and Citibank cannot enforce the arbitration clause because those banks possessed information regarding this litigation which they withheld from their cardholders when they added the clause to their contracts. In the absence of candid disclosure, it would be unconscionable to allow Chase and Citibank to nullify cardholders' rights.

361 F. Supp.2d at 251-254. Next, the Court held that Rule 23 necessarily prohibited

communication with class members to solicit their agreements without court approval.

> A court has supervisory authority over a defendant's communications with putative class members. See Fed.R.Civ.P. 23(d). Indeed, "[b]ecause of the potential for abuse, a district court has both the duty and the broad authority to exercise control over a class action and to enter appropriate orders governing the conduct of counsel and parties." . . .
>
> A court must take steps to further the policies embodied in Rule 23. One policy of Rule 23 is the protection of class members from "misleading communications from the parties or their counsel." *Erhardt v. Prudential Group*, 629 F.2d 843, 846

(2d Cir.1980); *see also In re WorldCom, Inc. Sec. Litig.*, No. 02 Civ. 3288(DLC), 2003 WL 22701241, at *8 (S.D.N.Y. Nov.17, 2003). That same policy concern applies where a party misleads class members by omitting critical information from its communications. Communications that threaten the choice of remedies available to class members are subject to a district court's supervision:

> A district court's duty and authority under Rule 23(d) to protect the integrity of the class and the administration of justice generally is not limited only to those communications that mislead or otherwise threaten to create confusion and to influence the threshold decision whether to remain in the class. Certainly communications that seek or threaten to influence the choice of remedies are ... within a district court's discretion to regulate.

*In re Sch. Asbestos Litig.*, 842 F.2d 671, 683 (3d Cir.1988); *see also Keystone Tobacco Co., Inc v. U.S. Tobacco Co.*, 238 F.Supp.2d 151, 154 (D.D.C.2002) ...

.Indeed, a district court's authority under Rule 23(d) is not limited to communications that actually mislead or otherwise threaten to create confusion, but extends to communications that interfere with the proper administration of a class action or those that abuse the rights of members of the class. *Cobell v. Norton*, 212 F.R.D. 14, 19 (D.D.C.2002).

"A unilateral communications scheme, moreover, is rife with potential for coercion. If the class and the class opponent are involved in an ongoing business relationship, communications from the class opponent to the class may be coercive." *Kleiner*, 751 F.2d at 1202 (internal quotations, citations and brackets omitted); *see also Hampton Hardware v. Cotter & Co.*, 156 F.R.D. 630, 633-34 (N.D.Tex.1994) (holding evidence of letters discouraging participation in lawsuit, an ongoing business relationship between the parties and plaintiffs' dependence on defendant for supplies sufficient to prohibit all litigation-related communication prior to class certification); *Tedesco v. Mishkin*, 629 F.Supp. 1474, 1484 (S.D.N.Y.1986). . . . Indeed, when a defendant contacts putative class members for the purpose of altering the status of a pending litigation, such communication is improper without judicial authorization. *See Hampton Hardware*, 156 F.R.D. at 632 (noting that defendant's communications affecting a class member's decision to participate in the litigation are improper); *see also In re Sch. Asbestos*, 842 F.2d at 682 n. 23 (listing cases where defendants "sought either to affect class members' decisions to participate in the litigation or to undermine class plaintiffs' cooperation with or confidence in class counsel").

\* \* \*

In sum, defendants' unsupervised communications were improper because they sought to eliminate putative class members' rights in this litigation. Thus, this Court holds that those arbitration clauses may not be enforced because Chase and

11

Citibank added them, without notice, after this litigation commenced. 361 F. Supp.2d at 251-254.

As in *In re Currency Conversion Fee Antitrust Litigation*, the putative class members rights must be protected as of the date of the filing of the complaint, the arbitration clause is an invalid coercive adhesion contract.

In this case, the defendants have systematically undermined and defied the authority of this Court and the FLSA and have created an environment wherein prospective plaintiffs cannot make a fair and informed decision to join or not join this litigation. Retaliatory lawsuits and misleading statements are precisely the type of conduct that the Court must prevent. Accordingly, the circumstances warrant the issuance of a protective order and corrective action to remedy the abuses of the defendants. *See Haffer v. Temple University*, 115 F.R.D. 506, 512 (E.D. Pa. 1987) (courts routinely issue restraining orders after parties initiate improper communications with class members); *accord Hampton Hardware, Inc. v. Cotter & Company, Inc.*, 156 F.R.D. 630 (N.D. Tex. 1994). The protection of innocent class members must be of tantamount importance when a Defendant engages in this type of inappropriate conduct.

**b.     A Variety of Remedies are Required to Ameliorate the Impermissible Effects of Defendants' and Counsel's Impermissible Actions.**

Defendants behavior must be remedied in full, though this is not easy to accomplish since individuals who do not wish to join the case for some other reason, are hard to separate from those who have been chilled from participating. Since individuals cannot be part of an FLSA action without affirmatively opting in, and since it will be virtually impossible for the Court to remedy the employer defendants' clear communication to employees to chill employees' participation, a variety of actions are required:

1.     Enjoin any effort by defendants to chill participation in this case, including prohibiting

any further communication concerning joining the case, except as approved by the Court;

2. Enjoin retaliation by defendants against any individual participating in this case;

3. Certify the class;

4. Direct prompt notice all class members of the impropriety and invalidity of the Arbitration Agreement;

5. Equitably toll the statute of limitations for federal FLSA claims for the same amount of time during which individuals would have believed they could not opt-in to the FLSA claim.

6. Fine the defendants an amount equal to what liquidated damages would have been, so that the defendants do not achieve any of the benefit of chilling individuals from opting-in to this case;

7. Reserve the opportunity for individuals to join the case post-judgment;

8. Award plaintiffs' costs and attorneys' fees for the time spent on this motion.

Defendants cannot be permitted to benefit from decreased participation in the case through unlawful means.

**POINT TWO**

**A TEMPORARY RESTRAINING ORDER PROHIBITING RETALIATION AGAINST ANY PLAINTIFF NOT SIGNING THE AGREEMENT, OR ACTING IN VIOLATION OF ITS PURPORTED TERMS IS REQUIRED.**

Defendants have plainly communicated to all employees that they must sign the agreement to forego their right to go to court or lose their jobs. (Ex. E) The agreement clearly attempts to chill participation in this case. The agreement itself states that the agreement to arbitrate is "in consideration for my continued employment with Terrier Claims Services, Inc." If continued employment was not contingent on signing the agreement, then it would not be

"consideration." The agreement prohibits joining this case, bringing another case, participating in class or collective actions and bringing claims to the state or federal Departments of Labor.

To remedy this unauthorized, impermissible, coercive communication, chilling participation in this case, defendants must be promptly precluded from taking any retaliatory measures against any individual who does not sign the agreement, or who acts in violation of the agreement.

Injunctive relief prohibiting retaliation is available under the FLSA. *Bailey v. Gulf Coast Transp., Inc.*, 280 F.3d 1333 (11 Cir. 2002):

> Because the language providing for equitable relief for violations of the antiretaliation provision is not restrictive, but expansive ("including without limitation employment, reinstatement, [and] promotion," 29 U.S.C. § 216(b) (emphasis added)), we do not find "a necessary and inescapable inference" that Congress intended to restrict courts from issuing preliminary injunctions to preserve the status quo during the pendency of the lawsuit. The antiretaliation provision was meant "to foster a climate in which compliance with the substantive provisions of the Act would be enhanced" by protecting employees who come forward with complaints. *DeMario Jewelry, Inc.*, 361 U.S. at 292, 80 S.Ct. 332. Employees may be much less likely to stand up for their substantive rights under the statute if they know that months or years will pass before a court can act to halt prohibited intimidation by their employer. When an employee has demonstrated a likelihood of success on the merits and satisfied the other requirements for preliminary injunctive relief, allowing for such relief to put the employee back in the position he held before the employer's retaliatory conduct is consistent with § 216(b)--it is a form of equitable relief that effectuates the purposes of the antiretaliation provision.

*Id.* 280 F.3d at 1337.

### A.    Plaintiff Meets The Standard for Preliminary Relief

Where a preliminary injunction is sought to preserve the status quo, a motion for injunctive relief requires a showing that the moving party will suffer irreparable harm absent the injunction and that either (1) the moving party is likely to succeed on the merits or (2) there are serious questions relative to the merits and the balance of hardships tips in favor of the moving

14

party. *McGraw-Hill Companies, Inc. v. Ingenium Technologies Corp.,* 364 F.Supp.2d 352 (SDNY 2005); *N. Atl. Instruments, Inc. v. Fred Haber*, 188 F.3d 38, 43 (2d Cir.1999).[5]

> "The standard for granting a temporary restraining order and a preliminary injunction pursuant to Rule 65 of the Federal Rules of Procedure are identical." Spencer Trask Software and Info. Servs., LLC v. RPost Int'l Ltd., 190 F.Supp.2d 577, 580 (S.D.N.Y.2002).
>
> To satisfy the threshold requirement of irreparable harm or injury, a movant need not demonstrate its certainty. *See, e.g., Reuters Ltd. v. United Press Int.l, Inc.*, 903 F.2d 904, 907 (2d Cir.1990) ("a showing of probable irreparable harm is the single most important prerequisite for the issuance of a preliminary injunction.") (citation and internal quotation marks omitted) (emphasis added)."Irreparable harm must be shown by the moving party to be imminent, not remote or speculative, and the alleged injury must be one incapable of being fully remedied by monetary damages." *Reuters*, 903 F.2d at 907. The movant is required to establish not a mere possibility of irreparable harm, but that it is "likely to suffer irreparable harm if equitable relief is denied." *JSG Trading Corp. v. Tray-Wrap, Inc.*, 917 F.2d 75, 79 (2d Cir.1990) (emphasis in original)."Likelihood sets, of course, a higher standard than 'possibility.' " Id.

*Wenner Media LLC v. Northern & Shell North America Ltd.,* 2005 WL 323727 at *3 (SDNY 2005)

1. **Irreparable Harm**

As this Court wrote in *Wenner Media LLC v. Northern & Shell North America Ltd.,* 2005 WL 323727 at *3 (SDNY 2005):

> To satisfy the threshold requirement of irreparable harm or injury, a movant need

---

[5] As this Court noted in *Smith v. Bowers,* 337 F.Supp.2d 576 (S.D.N.Y.,2004): "The Second Circuit has established two different tests for establishing a plaintiff's right to preliminary injunctive relief. The first test, to be applied where a plaintiff seeks a preliminary injunction that maintains the status quo, requires the plaintiff to "establish irreparable harm and either (a) a likelihood of success on the merits or (b) sufficiently serious questions going to the merits and a balance of hardships tipping decidedly in its favor." *Kamerling v. Massanari*, 295 F.3d 206, 214 (2d Cir.2002). The second, more stringent test, requires the plaintiff to prove a "clear or substantial likelihood of success on the merits." *Tom Doherty Associates, Inc. v. Saban Entertainment, Inc*., 60 F.3d 27, 37 (2d Cir.1995). It applies where "(i) an injunction will alter, rather than maintain, the status quo, or (ii) an injunction will provide the movant with substantially all the relief sought and that relief cannot be undone even if the defendant prevails at a trial on the merits." Id. at 33-34."

not demonstrate its certainty. *See, e.g., Reuters Ltd. v. United Press Int.l, Inc.*, 903 F.2d 904, 907 (2d Cir.1990) ("a showing of probable irreparable harm is the single most important prerequisite for the issuance of a preliminary injunction.") (citation and internal quotation marks omitted) (emphasis added). "Irreparable harm must be shown by the moving party to be imminent, not remote or speculative, and the alleged injury must be one incapable of being fully remedied by monetary damages." *Reuters*, 903 F.2d at 907.

Chilling of First Amendment rights is "irreparable harm." *See Elrod v. Burns*, 427 U.S. 347, 373 (1976) ("loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury"); *Maciera v. Pagan*, 649 F.2d 8, 18 (1st Cir.1981) ("chilling effect" meets "irreparable harm" requirement both in the context of the First Amendment and the LMRDA); *Matthews v. Sutton,* 1996 WL 515221 (E.D.Pa.1996)(injunction prohibiting disciplinary charges against union official running for election).

In *Elrod v. Burns,* the Supreme Court held that an injunction was properly entered where an employer was threatening termination of employees for political reasons. The Court held that prohibiting termination of employees to protect First Amendment rights was appropriate:

> At the time a preliminary injunction was sought in the District Court, one of the respondents was only threatened with discharge. In addition, many of the members of the class respondents were seeking to have certified prior to the dismissal of their complaint were threatened with discharge or had agreed to provide support for the Democratic Party in order to avoid discharge. It is clear therefore that First Amendment interests were either threatened or in fact being impaired at the time relief was sought. The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury. *See New York Times Co. v. United States*, 403 U.S. 713, 91 S.Ct. 2140, 29 L.Ed.2d 822 (1971). Since such injury was both threatened and occurring at the time of respondents' motion and since respondents sufficiently demonstrated a probability of success on the merits, the Court of Appeals might properly have held that the District Court abused its discretion in denying preliminary injunctive relief. *See Bantam Books, Inc. v. Sullivan*, 372 U.S. 58, 67, 83 S.Ct. 631, 637, 9 L.Ed.2d 584 (1963).

427 U.S. at 373-4.

Defendants clearly threaten such loss of rights here. *BE & K Const. Co. v. N.L.R.B.,* 536

U.S. 516 (2002)("the right to petition extends to all departments of the Government, and that "[t]he right of access to the courts is ... but one aspect of the right of petition.") Access to the courts is a "fundamental" constitutional right. *Bounds v. Smith* 430 U.S. 817, 821 (1977). Absent an injunction, the threat of continued chilling of the First Amendment right to participate in this litigation constitutes irreparable harm.

Notably, defendants will suffer no cognizable harm if the injunction is ordered.

    **2.**    **Likelihood of Success.**

Plaintiff is likely to succeed on the merits. Defendant is an employer subject to the FLSA and state labor law protections. Defendant fails to pay its investigators time and one half overtime premium. *Ex. G.* There is no exemption applicable to these employees. There is no valid defense to federal and state overtime requirements to pay for all hours and time and one-half for these plaintiffs. *Reich v. State of N.Y.,* 3 F.3d 581, 587-8 (2d Cir. 1993)(no administrative exemption for BCI investigators because investigations are production work rather than administrative activity) *cert. den.* 510 U.S. 1163. The plaintiff is also likely to succeed on some form of notice being approved, whether class or collective. *See Motion for Class Certification and Collective Action Notice*. *See also Foster v. Food Emporium,* 2000 WL 1737858 (S.D.N.Y.,2000)(McMahon, J)*; Hoffman v. Sbarro, Inc.*, 982 F.Supp. 249 (S.D.N.Y.1997).

Defendants have indicated to the plaintiff class that they must renounce going to court to collect overtime "in consideration for continued employment." This directive was in writing. It was prepared by defense counsel. It was delivered by the defendants to the class. It explicitly states a retaliatory intent. Plaintiffs are likely to prevail on the merits of their claim, or alternatively, there are serious questions relative to the merits and the balance of hardships tips in favor of the moving party. Uncorrected, defendants' actions will result in irreparable harm. No cognizable harm will

ensue to defendants from entering an injunction.

**CONCLUSION**

   Defendants and their counsel have engaged in improper efforts to chill the participation of the class in this case. Defendants are impermissibly attempting to evade the Court's ability to manage collective and class litigation. The Court should enter a temporary restraining order, as requested. Further, this Court should enter a broad injunction that remedies the variety of ways in which defendants' actions have unlawfully and extrajudicially advanced goals of limiting their liability. This court should:

1. Enjoin any effort by defendants to chill participation in this case, including prohibiting any further communication concerning joining the case, except as approved by the Court;

2. Enjoin retaliation by defendants against any individual participating in this case;

3. Certify the class;

4. Direct that defendants promptly notify all class members of the impropriety and invalidity of the Arbitration Agreement;

5. Equitably toll the statute of limitations for federal FLSA claims for the same amount of time during which individuals would have believed they could not opt-in to the FLSA claim.

6. Fine the defendants an amount equal to what liquidated damages would have been, so that the defendants do not achieve any of the benefit of chilling individuals from opting-in to this case;

7. Reserve the opportunity for individuals to join the case post-judgment;

8. Award plaintiffs' costs and attorneys' fees for the time spent on this motion.

Dated: November 4, 2005

Respectfully Submitted,

_____/s/_____
Dan Getman (DG4613)
Law Office of Dan Getman
9 Paradies Lane
New Paltz, NY 12561
(845) 255-9370

COUNSEL FOR PLAINTIFF