UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: _____
```

------------------------------------------------------X

SALLI J. BRAGG, individually
and on behalf of others similarly
situated,

                        Plaintiff,

- against -                                                     05 Civ. 7280 (CM)

TERRIER CLAIMS SERVICES, INC.,
DANIEL J. SULLIVAN, AND EDWARD
J. SULLIVAN,

                        Defendants.

------------------------------------------------------X

DECISION AND ORDER GRANTING PLAINTIFF'S MOTION
FOR APPROVAL OF CLASS SETTLEMENT

McMahon, J.:

        This matter is before the Court for final approval of a proposed settlement of the

plaintiff's claims against the Defendants for failure to pay overtime wages as required under the

Fair Labor Standards Act, 29 U.S.C. § 201 *et seq*. In particular, the parties seek an order from

this Court (a) granting final approval of the class settlement and plan of allocation; (b) approving

service payments and retaliation damages to the named Plaintiff; (c) entering an injunction

requiring payment of minimum wages and time and one half for all hours worked over forty in a

week by investigators, requiring posting of federal and state Wage and Hour rights, and

prohibiting any retaliation or recovery of moneys paid out in this settlement, and (e) approving

the payment of reasonable costs and fees to the Class Counsel. The settlement, negotiated

through extensive arms length bargaining, is fair, reasonable and adequate. All class members

Copies mailed / handed / faxed to counsel  7 /21 /06

1

have been sent notice in a form directed by the Court, and all class members have had an opportunity to seek exclusion from the class or object to the settlement. There have been no requests for exclusion from the class. *FRG "Garzon" declaration, Ex. A. Getman decl. Ex. D, para.2.* There have been no objections to the settlement. *Id.* Therefore, the settlement offer is approved, as is the award of attorneys' fees to plaintiff's counsel.

## I.   THE CLASS SETTLEMENT

Salli Bragg, the class representative, filed a complaint in this action on August 17, 2005, claiming that the Defendant failed to pay her and other similarly situated investigators overtime for all hours worked over 40 in a week. *See Complaint.* The Parties appeared before the Court on October 28, 2005 for a scheduling conference. Plaintiff thereafter moved for class and collective action certification. Shortly thereafter, plaintiff moved for a temporary restraining order claiming that defendant had engaged in communications with the putative class members and caused two lawsuits to be filed against the named plaintiff in the Northern District of New York and the District of New Jersey.

The parties engaged in substantial discovery. Plaintiff gave a day's deposition testimony in Poughkeepsie New York on November 4, 2005. Plaintiff took depositions of defendant through Supervisor of Surveillance Investigators Michael Brittman, bookkeeper Wendy Davidson, and branch manager John O'Shaughnessy.

This Court entered a TRO on November 18, 2005, which was extended indefinitely pursuant to the stipulation of the parties. During the pendency of the Temporary Restraining Order, the parties reached a preliminary settlement. The basic terms of the settlement are set forth below:

**Class Terms**

1.      In full and final settlement of the Settled Claims, Terrier will pay each Settling Class Member a Settlement Sum equal to two (2) hours of Overtime Differential pay for each workweek that the Class Member was employed by Terrier, less tax withholding as required by law.  The Overtime Differential rate of pay is based on the Class Member's pay rate in effect as of December 31st or the latest date worked by the Class Member in the year in which the workweek occurred.

2.      Class Counsel through the Claims Administrator performed an audit of Terrier's time and payroll records to verify membership in the class, the accuracy of the Settlement Sum to the Settling Class Members prior to the class notice mailing.

3.      Terrier warrants that it currently does and will continue to post all federal and state Department of Labor posters concerning employees' rights to minimum wage and overtime compensation.

4.      Terrier warrants that it will abide by all state and federal laws concerning minimum wages and overtime pay applicable to the Class.

6.      Terrier agrees that it will not retaliate, in any manner, against any Class Member or the Class Representative as a result of their participation in the Federal Action.

Based on the discovery, as well as a prior investigation by the U.S. Department of Labor into defendant's overtime pay practices, the Parties negotiated a settlement formula based on the period to which the claims applied. The Department of Labor's conclusion of its investigation found that investigators worked for 2 hours of overtime per week and provided a formula for back pay based on that 2 hour per week figure. *(USDOL Investigation Report, Ex. B)*. The same figure was negotiated and utilized in this case.

Individual Class Member recoveries were then calculated based on the negotiated formula and the settlement fund was determined by aggregating the individual amounts.

Attorneys' fees are were designated in the agreement to be determined separately as a specified amount with respect to named plaintiff Bragg and opt-in Miller and as a 1/3 percentage of the recovery to the class, whatever that total turned out to be. The settlement thus calls for payment of attorneys' fees and costs to plaintiffs counsel as follows:

    a.    1/3 of the amount to be paid to the class pursuant to an approved settlement, plus $1,666.66 representing 1/3 of the $5,000 paid by defendant to Joshua Miller herein, plus $22,000 representing a percentage of the $84,375 payable to the named plaintiff under the terms of the settlement if approved;

    b.    If plaintiff's counsel's regular hourly fee for work on this case exceeds the amounts stated above, counsel shall be permitted to make a fee application at a date set by the Court.

    c.    All payments for costs and fees are in addition to the Settlement Fund and do not act to diminish it in any way. *Settlement Agreement.*

Thus, plaintiffs' counsel shall receive $65,974.66 in attorneys' fees, which is 23.37 % of the total case payout of $282,274 or 30.5 percent of the $216,299.36 payout to the plaintiffs ($126,924.36 to the class, $84,375 to Bragg, $5,000 to Miller). Although this is not a common fund case, the fees of 23.37 percent of the total payout figure are well within the range of permissible fees in common fund cases and illustrates the reasonableness of the fee.

On April 13, 2006, the Court preliminarily certified the Class in this matter and granted preliminary approval to the Parties' Settlement Agreement. In that conditional approval, the Court designated Salli Bragg as class representative and appointed the Getman Law Office as lead counsel. The Court approved the form of a notice offering class members the opportunity to object and or opt out of the litigation, and the Court ordered that it be sent to class members by

the Claims Administrator via U.S. mail. The Preliminary Approval Order provided that any objections, opt outs or challenges be received before the notice response deadline.

Upon plaintiff's approval, the defendant retained FRG Claims Administration Services (the "Claims Administrator") to mail the Notice of Settlement and Opportunity to Participate or Object (the "Notice") The Claims Administrator received a computerized list of some 95 names and addresses (the "Class List"), that included all Class Members. As of the filing of this motion, the Class Administrator has received no objections to the settlement, no requests to opt out of the settlement. *FRG Decl. Ex. A.*

The Settlement benefits the Settlement Class Members through the allocation of a Settlement Fund of $126,924.36 among them based on the formula set forth in the settlement. The Plan of Allocation that the Court preliminarily approved provides that the Net Settlement Fund will be allocated among Settlement Class Members on a pro rata basis according to (a) the number of weeks in which the Class Member actually performed work, (b) the individual's salary as of December 31st or the latest date worked by the Class Member in the year in which the workweek occurred, (c) the time period(s) during which the Class Member held such position(s) during the Relevant Period. *Settlement Agreement.* Under the terms of the Settlement Agreement, each Settlement Class Member will receive an average of $1,336 each (the payments will vary based on the Settlement Class Member's position, salary and the amount of time he or she worked for the Defendant.).

II. **DISCUSSION**

A. **The Court Approves the Class Settlement**

While the decision to either grant or deny approval of a class settlement lies within the trial court's discretion, *see In re Ivan F. Boesky Sec. Litig.*, 948 F.2d 1358, 1368 (2d Cir. 1991), "this discretion should be exercised in light of the general judicial policy favoring settlement."

*In re Blech Sec. Litig.*, 2000 WL 661680, at *3 (S.D.N.Y. May 19, 2000) (*citing Weinberger v. Kendrick*, 698 F.2d 61, 73 (2d Cir. 1982) ("There are weighty justifications, such as the reduction of litigation and related expenses, for the general policy favoring the settlement of litigation.")).

Generally speaking, this Court's review of a proposed class settlement involves a two-step process, including preliminary approval and then a final "fairness hearing" after the claims process. *In re Initial Pub. Offering Sec. Litig.*, 226 F.R.D. 186, 191 (S.D.N.Y. 2005); *see* Manual for Complex Litigation, Fourth § 21.632 (2004). "First, the court reviews the proposed terms of settlement and makes a preliminary determination" as to whether due process concerns are met, giving appropriate consideration to the interests of all class members. *Id.* Second, after the court preliminarily approves the settlement and notice is provided to the class regarding certification, as well as the terms of proposed settlement, the court will have a fairness hearing at which class members and the parties may "present arguments and evidence for and against the terms, before the court makes a final determination." *Id.*

Ultimately, the court may approve a class settlement only upon finding that it is "fair, adequate, and reasonable, and not a product of collusion." *Joel v. Guiliani*, 218 F.3d 132, 138-39 (2d Cir. 2000); *see also In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 124 (S.D.N.Y. 1997) ("The central question raised by the proposed settlement of a class action is whether the compromise is fair, reasonable and adequate.") This determination, in turn, requires the court to consider "two types of evidence," including "the substantive terms of the settlement," and "the negotiating process by which the settlement was reached." *Weinberger*, 698 F.2d at 73-74.

    1.  **The Settlement's Substantive Terms Are Fair, Adequate, and Reasonable**

The analytical framework for evaluating the substantive fairness of a class-action settlement was set forth by the Second Circuit in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448,

463 (2d Cir. 1974) *abrogated on other grounds by Goldberger v. Integrated Res., Inc.*, 209 F.3d

43 (2d Cir. 2000); *see also In re PaineWebber*, 171 F.R.D. at 125. Grinnell set out 9 factors that

courts should consider in evaluating the fairness of a class settlement:

> (1) the complexity, expense and likely duration of the litigation;
> (2) the reaction of the class to the settlement; (3) the stage of the
> proceedings and the amount of discovery completed; (4) the risks
> of establishing liability; (5) the risks of establishing damages; (6)
> the risks of maintaining the class action through the trial; (7) the
> ability of the defendants to withstand a greater judgment; (8) the
> range of reasonableness of the settlement fund in light of the best
> possible recovery; and (9) the range of reasonableness of the
> settlement fund in light of all the attendant risks of litigation.

*Id.* At this stage of the proceedings, given the involvement of qualified counsel, the court is not

required to try the case. Rather, "[t]he court is only called upon to consider and weigh the nature

of the claim, possible defenses, the situation of the parties, and the exercise of business judgment

in determining whether the proposed settlement is reasonable." *Id.* at 462. Its "primary concern"

is with the substantive terms of the settlement and comparing those terms with the likely rewards

of litigation. *See Weinberger*, 698 F.2d at 73.

Based on the *Grinnell* factors, the Class Settlement is fair, adequate and reasonable. First,

the Settlement Agreement allows Class Members to recover a substantial recovery now, without

suffering the delay and risk of litigating the claims. "Most class actions are inherently complex

and settlement avoids the costs, delays and multitude of other problems associated with them."

*In re Austrian and German Bank Holocaust Litig.*, 80 F.Supp.2d 164, 174 (S.D.N.Y. 2000). In

this matter, further litigating this case could drag on for years and require the expenditure of a

tremendous amount of resources. To prove the claims with certainty, additional discovery would

have to be had into liability, defenses and individual damages. The process would inevitably

involve discovery disputes, some of which would require the intercession of the Court. The

settlement is fair because it provides Class Members with a substantial recovery now, avoiding the risk and delay of litigation.

Second, perhaps the most telling indicator that the Settlement is fair is that not a single Class Member has objected to any aspect of it. *Ross v. A.H. Robins*, 700 F. Supp. 682, 684 (S.D.N.Y. 1998)("The absence of objectants may itself be taken as evidencing the fairness of the settlement.") citing *Weiss v. Drew National Corp.*, 465 F. Supp. 548 (S.D.N.Y.1979). Court-approved Notice was mailed to the 95 Class Members. *See* Garzon Declaration. The Class Administrator took steps to ensure that Class Members received the Court-approved Notice. *Id.* ¶¶ 7-10. The Court set July 16, 2006 as the cut off date for filing objections. With that date come and gone, no Class Members have objected to the Settlement, the Service Payments to the Class Representative, or the proposed arrangement for the determination by the Court of attorneys' fees and costs.

It is well settled that "the reaction of the class to the settlement is perhaps the most significant factor to be weighed in considering its adequacy. In fact, the lack of objections may well evidence the fairness of the Settlement. *In re American Bank Note Holographics, Inc.*, 127 F. Supp. 2d 418, 425 (S.D.N.Y. 2001). Here, the fairness, reasonableness, and adequacy of the Settlement are well established by the absence of any objection to the Settlement.

Third, the Plaintiffs have had ample opportunity to engage in meaningful discovery to evaluate the Class claims through factual discussion with the named plaintiff, depositions of the defendants. The Plaintiffs had the opportunity to conduct deposition discovery on the employment relationship, the Plaintiffs' job duties, pay and working schedules, the Defendants' administration of payroll, company policies and procedures, and possible defenses to FLSA liability. The discovery was in the form of documents, depositions of company representatives

and Class Members' supervisors, sharing of information through counsel, and interviews with class members. Additionally, the Department of Labor analysis confirms what counsel have learned in discovery. As a result of these efforts, the Plaintiffs have sufficient information on which to assess the potential merit of each claim, ultimate liability, and the apparent risk of proceeding to trial and to a certain extent, the defendant's ability to withstand a greater judgment. *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 185 (W.D.N.Y. 2005) ("While the parties need not have engaged in extensive discovery, a sufficient factual investigation must have been conducted to afford the Court the opportunity to intelligently make an appraisal of the Settlement.") (internal quotations omitted). Based on what was learned through that discovery, Plaintiffs' Counsel has negotiated a fair settlement for the Class.

Fourth, the Settlement avoids the risks of establishing liability. The Defendant believes a variety of defenses exist and that it would press them through dispositive motions. Of particular concern was the defense claim that its policies on time sheet submission allowed double counting of hours in certain situations -- for example, where an investigator was parked outside a subject's house on one case and simultaneously doing paperwork on a second case. Accordingly, defendant's contention that the time records effectively overstated the hours worked under the FLSA would have been fact intensive determinations. As such litigation to trial would create risks for the Class. Further, trial would involve the development of extensive proof with respect to complex legal and factual issues such as exemptions and calculating hours worked, and proving damages could require the use of expert witnesses. In short, "[t]he [s]ettlement [a]greement in this matter represents a compromise between the strengths of plaintiffs' case and the possible success of [Defendants'] defenses." *Eastman Kodak*, 228 F.R.D. at 186.

Fifth, establishing individual damages in this case would be much more difficult, for the reason given above. *Chatelain v. Prudential-Bache Securities, Inc.*, 805 F. Supp. 209, 214 (S.D.N.Y. 1992) ("In class actions, the 'complexities of calculating damages increase geometrically.'") (citations omitted). Litigating the FLSA claims would require establishing weekly damages for each individual plaintiff. Discovering and analyzing the information necessary to determine those damages for each of putative class Plaintiffs during a six-year period can take many months, even years. Further, even at the culmination of the discovery, individual damages often involve estimates and assumptions because records do not exist for the actual hours that the Plaintiffs worked. The Settlement provides a reasonable estimate of individual damages and avoids the time-consuming and likely futile exercise of trying to determine exact individual damages.

Sixth, although the Defendant has not challenged the class for settlement purposes, it is likely that it would contest class certification if forced to continue with the litigation. An important aspect of the Settlement Agreement is that, beyond providing for fair compensation to each Class Member, all Class Members who do not opt out receive compensation. If the Defendant successfully challenges the class, some Class Members would likely not recover. Therefore, this factor weighs in favor of approval of the Settlement. *In re PaineWebber*, 171 F.R.D. at 129.

Seventh, the Defendant's ability to withstand a greater judgment is in doubt. Defendant corporation is owned by two brothers. There was never sufficient information exchanged to fully evaluate this aspect of concern, but for small closely held companies, this factor is always a significant concern for plaintiffs, insofar as simply closing shop can create significant collection difficulties. This factor, while not completely clear, at a minimum, does not weigh against the

10

fairness of the settlement. *In re PaineWebber*, 171 F.R.D. at 129. The fact that a defendant is able to pay more than it offers in settlement does not, standing alone, indicate that the settlement is unreasonable or inadequate. *Id.*

Finally, the Settlement is reasonable in light of the best possible recovery and the attendant risks of litigation. "[T]here is a range of reasonableness with respect to a settlement—a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion." *Eastman Kodak*, 228 F.R.D. at 186. Continuing with litigation in this matter would pose risks, expense and delays for the Class. While the Parties have cooperated to this point, further discovery in anticipation of litigation would be extensive, requiring numerous conference and court involvement, and, inevitably, motions to compel. Moreover, the Defendant indicated that it believes a variety of defenses exist and that it would press them. Litigating the defenses poses risks to the Class recovery. In short, "[t]he [s]ettlement [a]greement in this mater represents a comprise between the strengths of plaintiffs' case the possible success of [Defendants'] defenses." *Eastman Kodak*, 228 F.R.D. at 186.

2. **The Settlement Is the Result of Good Faith, Arm's-Length Bargaining Undertaken by Experienced Counsel**

While the Court's "primary concern" is with how terms of the settlement compare to the likely result of a full-blown trial, *see Malchman v. Davis*, 706 F.2d 426, 433 (2d Cir. 1983), *abrogated on other grounds by Anchem Products, Inc. v. Windsor*, 521 U.S. 591 (1997), it also should pay close attention to the negotiating process to ensure that the settlement resulted from "arm's-length negotiations and that plaintiffs' counsel have possessed the experience and ability, and have engaged in the discovery, necessary to effective representation of the class's interests." *Weinberger*, 698 F.2d at 74. Moreover, "so long as the integrity of the arm's length negotiation

process is preserved… a strong initial presumption of fairness attaches to the proposed settlement." *In re NASDQ Market-Makers Antitrust Litig.*, 187 F.R.D. 465, 474 (S.D.N.Y. 1998) (internal citations omitted).

This Settlement is the product of an intense, adversarial arm's-length negotiation. Discovery had progressed to a stage at which the Parties have "a thorough understanding of the complexity of the issues and the strengths and weaknesses of their respective claims, defenses and strategies." *Gross v. Washington Mut. Bank, F.A.,* 2006 WL 318814 at *5 (E.D.N.Y. Feb., 9, 2006); *see also Blech Sec. Litig.*, 2000 WL 661680, at *4 ("plaintiffs have engaged in sufficient discovery to evaluate fully the merits of their claims and obstacles to success"). After conducting substantial discovery, the Parties spent several months negotiating a settlement formula. The negotiated formula, based on a class member's weeks worked, salary; position, was then applied to each individual class member and those individual claims were aggregated to determine the Settlement Fund. The defendant's initial calculation of the settlement amounts based on its payroll records was audited by the Claim Administrator through an independent CPA. Disputes were handled by the Claims Administrator. Attorneys' fees, administrative costs, the named Plaintiff's service, and litigation costs are all paid separate from the Settlement Fund and do not act to diminish it in anyway. See Settlement Agreement ¶¶ 54-58.

After the months of discovery and negotiation as well as litigation over the temporary restraining order, this Court concludes that the Settlement Agreement fairly, adequately and reasonably compensate the Class Members. The settlement is completely in accord with the investigation of the U.S. Department of Labor (Ex. B) This Court has routinely ascribed "great weight" to the recommendations of counsel, who are most closely acquainted with the facts of the underlying litigation. *See Chatelain*, 805 F. Supp. at 212.

Finally, there is no evidence of collusion, undue pressure, or other obvious deficiencies that would raise any concerns about the process by which Plaintiffs and Defendants have reached the proposed Settlement Agreement now before the Court. The settlement was negotiated during the hard fought motion for a temporary restraining order. Also, the Class Counsel's fees are not excessive, where they are an appropriate percentage of the plaintiffs' settlement and further based on the Court's ultimate determination of the reasonable value of counsel's service. *See Wal-Mart Stores v. Visa U.S.A. Inc.*, 396 F.3d 96, 121 (2d Cir. 2005). The Service Payment to the named Plaintiff is within the norm and appropriate. *See Sheppard v. Consol. Edison Co. of N.Y. Inc.*, 2002 WL 2003206, at 7 (E.D.N.Y. Aug. 1, 2002) (noting that incentive payments of up to $29,167 were "appropriate" and "that they fairly and adequately compensate the named plaintiffs for their special role in this litigation"). Moreover, no Class Member has objected to the terms of the Settlement despite ample opportunity. It is therefore entitled to a strong presumption of fairness. *Ross*, 700 F. Supp. at 684.

B. <u>**The Plan of Allocation Is Approved As Fair and Reasonable**</u>

The plan of allocation preliminarily approved by the court provides that each class member shall be paid "a settlement sum equal to two (2) hours of overtime differential pay for each workweek that the class member was employed by terrier, less tax withholding as required by law. *Settlement Agreement ¶5*. An allocation formula need only have a reasonable, rational basis, particularly if recommended by "experienced and competent" class counsel." *In re American Bank Note Holographics, Inc.*,, 127 F. Supp. 2d at 429-30. The formula is in complete accord with the prior determination of the U.S. Department of Labor investigation of the Defendant. Plaintiffs' counsel, experienced in overtime class action litigation in this Court and around the nation, finds this Plan of Allocation to provide the most equitable manner of distribution of the Settlement Fund to the Class in this case. Counsel considers this Plan to be objective and to

13

reasonably and fairly compensate the class members for their unpaid overtime and damages suffered as a result of the pay practices challenged by the Class in this case. "As with other aspects of settlement, the opinion of experienced and informed counsel is entitled to considerable weight." *Id.* at 430.

C.  **The Court Approves the Class Representative's Service Payment**

The $25,000 Service Payment to the Class Representative, which some courts refer to as an incentive award, is limited and appropriate given the overall size of the Settlement. *See Eastman Kodak*, 228 F.R.D. at 187 ("Incentive awards are not uncommon in class action cases and are within the discretion of the court. … such awards are particularly appropriate in the employment context.") The Service Payment in this case is well within the range of such awards commonly provided in litigation of this nature. *See, e.g., Eastman Kodak,* 228 F.R.D. at 187; *Sheppard*, 2002 WL 2003206, at *7 (noting that incentive payments of up to $29,167 were "appropriate" and "that they fairly and adequately compensate the named plaintiffs for their special role in this litigation"); *Selzer v. Bd. of Educ. of the City of N.Y.*, 1993 WL 42787, at *4-5 (S.D.N.Y. Feb. 16, 1993) (court approved incentive payment of $47,000 to two named plaintiffs in class action alleging discrimination in selection process to promote women to administrative and supervisory positions).  Here, the Class Representative has been called upon to respond to discovery, review the Defendant's discovery production, help Plaintiffs' Counsel prepare for depositions and develop discovery requests, assist Plaintiffs' counsel in its investigation, and to carry the heavy burden of making her claims public, which did expose her to clearly retaliatory actions including 2 countersuits in distant fora, threats to her present employer and to future employers in the small pool of potential employers in her chosen career. *Eastman Kodak*, 228 F.R.D. at 187.

Defendant will also pay the named plaintiff $50,000 to settle retaliation claims based on interference with plaintiff's current employment, threats concerning retaliation and conduct defendant took to file suit in the Supreme Court of Westchester County and the Northern District of New Jersey against the plaintiff located in Syracuse, and conduct in relation to conversations defendants had with plaintiff Bragg's current employer which placed her in fear for her job. *See Bragg and Getman Decls. in support of TRO Application.* The $50,000 in settlement of the retaliation is reasonable in light of verdicts based on retaliation. Defendant also agreed to dismiss those actions as part of the settlement herein, and has dismissed those actions filed against Bragg.

### D.  **The Payment of Reasonable Costs to the Class Administrator is Approved.**

The Defendant will pay the reasonable costs of administering the Settlement separate and apart from the Settlement Fund available to the Class Members. The costs of the administration of the Fund "will not act in any way to reduce the Settlement Fund." Settlement Agreement ¶4.5. The Class Administrator has already done a substantial amount of work fulfilling the Court's Order that it send Notice to the entire class. It has also updated addresses, reviewed and assisted in resolving Disputes, arranging for the audit of the payroll records to determine the accuracy of the calculations of amounts due by a CPA, calculated payments and taxes, and made arrangements for the eventual issuance of payments. Nevertheless, the full cost of administration will not be known until all the claims have been paid. At such time, the Claims Administrator will submit for the defendant's payment a written itemization of the costs of administering the settlement.

E.   **The Requested Fees and Costs Are Reasonable**

No class members have objected to the fees and costs. See Garzon Declaration. The Court-approved Notice was mailed to all Class Members. Id.. The Notice explained that, as part of the Settlement Agreement, Class Counsel would seek attorneys' fees and costs and explained how those fees would be calculated. Notice §V. It further provided Class Members with the opportunity to object to the fees. Notice §X, III(2). None have done so. Garzon Declaration ¶9.

Although the fees will not be taken out of a Settlement Fund, if they were, they would represent 23.37% of the Fund. If the legal fees had been part of the Settlement Fund, the Fund would have totaled $282,274. The total fees, $65,974.66 are 23.27% of that total.[1] Although this is not a common fund case, the fees of 23.37 percent of the total payout figure are well within the range of permissible fees in common fund cases and illustrates the reasonableness of the fee. Costs are to be separately calculated and forwarded to defendants for reimbursement to plaintiffs. Settlement.

The Getman Law Office is dedicated to employment litigation. The firm concentrates its practice on FLSA litigation, though it also handles a variety of other employment matters for employees, most particularly involving discrimination on the basis of race, gender, pregnancy, etc. It is currently litigating cases in federal courts around the country, including the Supreme Court of the United States, Southern, Eastern and Western Districts of New York, the District of Columbia, the Southern and Northern District of Texas, Southern District of West Virginian, the Western District of North Carolina, the Eastern District of Louisiana, the District of New Jersey, and the U.S. Court of Federal Claims. It has recently successfully handled litigation in the Eastern District of Michigan, the Northern District of Indiana as well. The vast majority of our cases are on behalf of low wage

---

[1] This total includes the $5,000 paid to Joshua Miller as a side deal to have him opt-out of the case.

worked and we perform those representations on a contingency basis. Class Counsel Dan Getman is an experienced litigator specializing in FLSA matters.

Attorneys' fees are were designated in the agreement to be determined separately as a specified amount with respect to named plaintiff Bragg and opt-in Miller and as a 1/3 percentage of the recovery to the class, whatever that total turned out to be.[2] The settlement thus calls for payment of attorneys' fees and costs to plaintiffs counsel as follows:

d.    1/3 of the amount to be paid to the class pursuant to an approved settlement, plus $1,666.66 representing 1/3 of the $5,000 paid by defendant to Joshua Miller herein, plus $22,000 representing a percentage of the $84,375 payable to the named plaintiff under the terms of the settlement if approved;

e.    If plaintiff's counsel's regular hourly fee for work on this case exceeds the amounts stated above, counsel shall be permitted to make a fee application at a date set by the Court.

f.    All payments for costs and fees are in addition to the Settlement Fund and do not act to diminish it in any way. *Settlement Agreement.*

The Defendant by settlement joins Class Counsel's application to the Court for fees and costs in that amount. Federal courts have made clear that such commonplace agreements are proper. *See, e.g., Malchman v. Davis*, 761 F.2d 893, 905 n.5 (2d Cir. 1985). ("But where, as here, the amount of the fees is important to the party paying them, as well as to the attorney recipient, it seems to the author of this opinion that an agreement 'not to oppose' an application

---

[2] The Settlement also provides that Class Counsel is permitted to apply for additional fees if counsel's hourly rate and work expended on the case were to yield a higher amount due. At present, Class Counsel does not anticipate so moving.

17

for fees up to a point is essential to completion of the settlement, because the defendants want to know their total maximum exposure and the plaintiffs do not want to be sandbagged.").

The Second Circuit has expressed a preference for the percentage award method of calculating attorneys' fees in class settlements, which the parties here adopt. *See Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 121 (2d Cir. 2005) ("The trend in this Circuit is toward the percentage method, which directly aligns the interests of the class and its counsel and provides a powerful incentive for the efficient prosecution and early resolution of litigation.") (internal quotations omitted). This method takes into consideration the "effort expended and risks undertaken by plaintiffs' counsel and the results of those efforts, including the value of the benefits obtained for the class." *Eastman Kodak*, 228 F.R.D. at 188.

Although attorneys' fees were negotiated separately from the Settlement Fund in this case, they represent 23.37% of the Settlement Fund if they had been included. The fees are compensation for the work performed up to and including settlement, as well as any work required to document the settlement, ensure that it is implemented, and obtain dismissal of the action. This award here is reasonable given the nature of the case, the risk of extensive and costly litigation, and the uncertainty of success and delay outweighing any potential recovery. *See Eastman Kodak*, 228 F.R.D. 174, at *189 (court held that attorneys' fees representing 40% of the total settlement fund were justified in the case by plaintiffs' counsel who had "extensive experience in employment litigation"); *Gross v. Washington Mut. Bank*, No. 02 CV 4135 (RML), 2006 WL 318814, at *1 (E.D.N.Y. Feb. 9, 2006) (class counsel awarded attorneys' fees and costs in the amount of $115,000 in suit brought under the Fair Debt Collection Practices Act where settlement fund equaled $350,000).

18

No Class Members have objected to attorneys' fees in this matter. Garzon Declaration. The Court-approved Notice mailed to all Class Members explained that, as part of the Settlement Agreement, Class Counsel would seek attorneys' fees as expressed in this application. Notice §V. It provided Class Members with the opportunity to object to the fees, but none have done so. Notice §10. The lack of objections by Class Members in and of itself suggests that the fees are reasonable. *See, e.g., In re American Bank Note Holographics, Inc.*, 127 F. Supp. 2d 418, 425 (S.D.N.Y. 2001); *Ross v. A.H. Robins*, 700 F. Supp. 682, 684 (S.D.N.Y. 1998)("The absence of objectants may itself be taken as evidencing the fairness of the settlement.") citing *Weiss v. Drew National Corp.*, 465 F. Supp. 548 (S.D.N.Y.1979).

## IV. CONCLUSION

All of the factors discussed above weigh heavily in favor of a finding that the Settlement is fair, reasonable and adequate, and the Court so finds. I hereby issue an Order: (a) granting final approval of the class action settlement and plan of allocation; (b) entering final judgment; (c) approving service and other payments to the named Plaintiff; (d) entering a permanent injunction requiring compliance with the overtime law and posting requirements, and barring retaliation against any plaintiff or class member herein, and (e) approving the reimbursement of plaintiffs' costs and attorneys' fees as set forth in the agreement..

Dated: July 21, 2006

U. S. D. J.